**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CARD VERIFICATION SOLUTIONS, LLC,** | |
| Plaintiff, | Case No. 1:13-CV-06335 |
| v. | PATENT CASE |
| **BANK OF AMERICA CORPORATION,** | |
| Defendant. | |
| **CARD VERIFICATION SOLUTIONS, LLC,** | |
| Plaintiff, | Case No. 1:13-CV-06337 |
| v. | PATENT CASE |
| **BMO FINANCIAL CORPORATION,** | |
| Defendant. | |
| **CARD VERIFICATION SOLUTIONS, LLC,** | |
| Plaintiff, | Case No. 1:13-CV-06339 |
| v. | PATENT CASE |
| **CITIGROUP, INC.,** | |
| Defendant. | |
| **CARD VERIFICATION SOLUTIONS, LLC,** | |
| Plaintiff, | Case No. 1:13-CV-06340 |
| v. | PATENT CASE |
| **DISCOVER FINANCIAL SERVICES, INC.,** | |
| Defendant. | |

**CARD VERIFICATION SOLUTIONS, LLC,**

|  |  |
|---|---|
| Plaintiff, | Case No. 1:13-CV-06342 |
| v. | |
| **WELLS FARGO & CO.,** | PATENT CASE |
| Defendant. | |

## PLAINTIFF CARD VERIFICATION SOLUTIONS, LLC'S CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION ……….…..………………………………………………… | 1 |
| II. | THE PATENT-IN-SUIT …………………………………………………….. | 3 |
| III. | ARGUMENT ……… …………………………………………………………... | 8 |
| | A. Claim Construction is Necessary in this Case Prior to Resolving the Issues of Patent Eligibility Under 35 U.S.C. § 101 Raised by Defendants' Motions ………………………………………………………….. | 8 |
| |    1. Defendants Do Not Come Close to Meeting Their Burden of Demonstrating that all 24 claims of the '245 Patent are Invalid ……. | 9 |
| |    2. The Few Cases Cited by Defendants Where a Patent was Invalidated at the Motion to Dismiss Stage do not Provide Clear and Convincing Evidence that the Claims of the '245 Patent are Patent Ineligible as a Matter of Law ……………………………………………………….. | 12 |
| |    3. The Machine-or-Transformation Test is Impossible to Apply in this Case Prior to Claim Construction …………………………………… | 15 |
| | B. The Claims of the '245 Patent are Patent-Eligible Under the Test Set Forth in *Ultramercial* …………………………………………………………….. | 17 |
| |    1. The Claims of the '245 Patent do not Involve an Intangible Abstract Idea ……………………………………………………………….. | 17 |
| |    2. To the Extent the Court Determines the '245 Patent Claims Involve an Intangible Abstract Idea, Meaningful Limitations in the Claims Make it Clear that the Claims are not Directed to an Abstract Idea Itself, but to a Non-Routine and Specific Application of that Abstract Idea ……………………………………………………….. | 19 |
| IV. | CONCLUSION ……………………………………………………………….. | 23 |

i

## TABLE OF AUTHORITIES

| Cases | Page(s) |
| --- | --- |
| *Accenture Global Servs., GMBH v. Guidewire Software, Inc.*,<br>728 F.3d 1336 (Fed. Cir. 2013) …………………………………………… | 2, 11 |
| *Accenture Global Services GmbH v. Guidewire Software Inc.*,<br>2010 WL 883019 (D. Del., 2010) ………………………………………… | 11 |
| *Bell Atlantic Corp. v. Twombly*,<br>550 U.S. 544 (2007) …………………………………………………….……... | 8 |
| *Bilski v. Kappos*,<br>130 S.Ct. 3218 (2010) ……………………………………………………... | 12, 15-16 |
| *BuySAFE v. Google, Inc.*,<br>2013 WL 3972261 (D.Del. July 29, 2013) …………………………….... | 12-13 |
| *Cardpool, Inc. v. Plastic Jungle, Inc.*,<br>2013 WL 245026 (N.D. Cal. Jan. 22, 2013) …………………………….... | 12 |
| *CLS Bank Int'l v. Alice Corp.*,<br>717 F.3d 1269 (Fed. Cir. May 10, 2013) ………………….……………... | 8, 12 |
| *Content Extraction and Transmission, LLC v. Wells Fargo Bank, N.A.*,<br>2013 WL 3964909 (D.N.J. July 31, 2013) …………………………………… | 12-13 |
| *CyberFone Sys., LLC v. Cellco P'ship*,<br>885 F. Supp. 2d 710 (D. Del. 2012) …………………………………………… | 13-14 |
| *CyberSource Corp. v. Retail Decisions, Inc.*,<br>654 F.3d 1366 (Fed. Cir. 2011) …………………………………………… | 2-3, 11 |
| *CyberSource Corp. v. Retail Decisions, Inc.*,<br>620 F.Supp.2d 1068, 1073 (N.D. Cal., 2009) ………………………………... | 11 |
| *Dealertrack,, Inc. v. Huber*,<br>674 F.3d 1315 (Fed. Cir. 2012) …………………………………………… | 2, 11 |
| *Dealertrack, Inc. v. Huber*,<br>2008 WL 5792509 (C.D. Cal., 2008) …………….…..................................... | 11 |

| Cases | Page(s) |
|---|---|
| *Glory Licensing LLC v. Toys "R" Us, Inc.*,<br>2011 WL 1870591 (D.N.J. May 16, 2011) …………………………………... | 12-13 |
| *Gottschalk v. Benson*,<br>409 U.S. 63 (1972) …………………………………………………….... | 9, 18 |
| *Graff/Ross Holdings LLP v. Fed. Home Loan Mort. Corp.*,<br>892 F. Supp. 2d 190 (D.D.C. 2012) ..…………………………………… | 12-13 |
| *In re Bilski*,<br>545 F.3d 943 (Fed. Cir. 2008) …………………………………………….. | 8 |
| *Investpic, LLC v. FactSet Research Systems, Inc.*,<br>2011 WL 4591078 (D.Del. 2011) …………..……….……………………….. | 13 |
| *Jones v. Bock*,<br>549 U.S. 199 (2007) ………………………………………………………… | 8 |
| *Le Roy v. Tatham*,<br>55 U.S. 156 (1852) ………………………………………………………….. | 18 |
| *Markman v. Westview Instruments, Inc.*,<br>52 F.3d 967 (Fed. Cir. 1995) …………………………………………… | 1, 9 |
| *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,<br>132 S.Ct. 1289 (2012) …………………………….…………………….. | 18 |
| *Microsoft Corp. v. i4i Ltd. P'ship*,<br>131 S.Ct. 2238 (2011)…………………………………………………… | 1-2 |
| *OIP Techs., Inc. v. Amazon.com, Inc.*,<br>2012 WL 3985118 (C.D. Cal. Sept. 11, 2012) …………………………….. | 12-14 |
| *Phillips v. AWH Corp.*,<br>415 F.3d 1303 (Fed. Cir. 2005) …………………………………………… | 1-3, 12 |
| *Sinclair-Allison, Inc. v. Fifth Ave. Physician Servs., LLC*,<br>2012 WL 6629561 (W.D. Okla. Dec. 19, 2012) …………………………... | 12-13 |
| *State Street Bank & Trust Co. v. Signature Fin. Group, Inc.*,<br>149 F.3d 1368 (Fed. Cir. 1998) ………………………………………… | 4 |
| *Ultramercial, Inc. v. Hulu, LLC*,<br>722 F.3d 1335 (Fed. Cir. 2013) ……………………………………………… | *Passim* |

| Cases | Page(s) |
|---|---|
| *Uniloc USA, Inc. v. RackSpace Hosting, Inc.*,<br>No. 6:12-cv-375 (E.D. Tex. Jan. 3, 2013) …………..…………………….. | 12 |
| *Vacation Exch., LLC v. Wyndham Exch. & Rentals, Inc.*,<br>No. 12-04229 (C.D. Cal. Sep. 18, 2012) ……………………………….. | 13-14 |

| Statutes | Page(s) |
|---|---|
| Fed. R. Civ. P. 12(b)(6) …………………………………………………….. | *passim* |
| 35 U.S.C. § 101 ...……………………………………………………………. | *passim* |

iv

# I.     INTRODUCTION[1]

Defendants' motions are premature.  Defendants have asked this Court to invalidate U.S. Patent No. 5,826,245 (hereinafter "the patent-in-suit" or "the '245 patent"), containing well over twenty claims, before the parties have had an opportunity to perform any discovery, and moreover, before the Court has had an opportunity to construe any of the claim terms.  This drastic and unusual relief sought by Defendants puts this Court in the position of making a final determination on patent eligibility under 35 U.S.C. § 101 without the benefit of any intrinsic or extrinsic evidence such as file histories, expert reports, and dictionaries, or claim construction. [2]

Defendants ask the court to dismiss these cases based solely upon their own preliminary minimal proposed constructions for one claim (by and large without any analysis of any remaining claims), and without a rigorous analysis of each claim limitation.  This is contrary to the fundamental tenets of claim construction, which require an analysis of the intrinsic evidence, including the patent and file history, as well as any pertinent extrinsic evidence, prior to construing the claims.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-20 (Fed. Cir. 2005); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-81 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

Additionally, Defendants have failed to meet their burden of proving, by clear and convincing evidence, invalidity under 35 U.S.C. § 101.  Every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary.  *Microsoft Corp. v.*

---

[1] Card Verification Solutions files this consolidated response in opposition to Case No. 1:13-cv-06335, Dkt. 20; Case No. 1:13-cv-06337, Dkt. 17; Case No. 1:13-cv-06339, Dkt. 16; Case No. 1:13-cv-06340, Dkt. 18; and Case No. 1:13-cv-06342, Dkt. 21.  Plaintiff has also reached an agreement to resolve Case No. 1:13-cv-06340 versus Discover Financial Services, Inc. and anticipates that dismissal papers will be filed in that action by January 31, 2014.

[2] Based on Plaintiff's research, dismissing a patent infringement action on a 12(b)(6) motion to dismiss on 35 U.S.C. § 101 grounds appears to be an issue of first impression for this Court.

*i4i Ltd. P'ship*, 131 S.Ct. 2238, 2242 (2011). Therefore, to find in favor of Defendants, the <u>only plausible reading</u> of the patent must be that there is clear and convincing evidence of ineligibility. *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013). Defendants' arguments are pure conclusions that do not come close to satisfying their burden of proving, by clear and convincing evidence, that each claim of the '245 patent is invalid under 35 U.S.C. § 101 under its only plausible construction.

To satisfy their burden at this stage, Defendants are required to either: (1) demonstrate that there are no disputed claim terms in the '245 patent; or (2) identify the universe of potential claim constructions for each element of each of claim in the '245 patent. *Ultramercial*, 722 F.3d, at 1339. Once this is done, Defendants would need to explain why each claim, under its only plausible construction, does not meet the requirements of Section 101. *Id.* Defendants do not come close to satisfying this burden.

Instead, Defendants lump together all 24 claims of the '245 patent into general categories, and make general conclusions about these general categories, without addressing all elements of a single claim much less all potential claim constructions for all elements of all claims. Defendants imply these conclusions are supported as a matter of law by comparing portions of the '245 patent claims to claims of other patents that have been held invalid under 35 U.S.C. § 101 after all underlying factual issues could be resolved.[3] This is not the proper legal

---

[3] As described *infra* in Section III.B.1 (p. 11), Defendants improperly rely on *CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366 (Fed. Cir. 2011); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012); and *Accenture Global Servs., GMBH v. Guidewire Software, Inc*., 728 F.3d 1336, 1341 (Fed. Cir. 2013). However, *Accenture* and *Dealertrack* were decided after full claim construction briefing and Markman rulings. *See Accenture Global Services GmbH v. Guidewire Software Inc*., 2010 WL 883019 (D. Del., 2010) and *Dealertrack, Inc. v. Huber*, 2008 WL 5792509 (C.D. Cal., 2008). The parties in *CyberSource* had submitted a Joint Claim Construction Statement and the Court adopted the construction most favorable to the patentee in

framework for claim construction. *See Phillips*, 415 F.3d, at 1312-13. Further, Defendants'

general conclusions are not sufficient to meet their burden and invalidate all the claims of the

'245 patent.[4]

At best, Defendants' motions are premature and Defendants' request should be addressed

after claim construction and discovery, as the analysis under 35 U.S.C. § 101, while ultimately a

legal determination, is rife with underlying factual issues. However, in denying Defendants'

motions, this Court has two options: it can (1) dismiss Defendants' motions and allow this issue

to be brought up again at summary judgment, post-claim construction; or it may (2) affirmatively

rule the '245 patent is directed to eligible subject matter under 35 U.S.C. § 101, pursuant to the

analytical framework for determining patent eligibility of abstract ideas recently articulated in

*Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d at 1342.[5] For the reasons stated herein, Card

Verification Solutions respectfully submits that the second option is appropriate, and requests

that the Court enter a ruling finding that all claims of the '245 patent are directed to subject

matter eligible for patent protection under 35 U.S.C. § 101.

## II.      THE PATENT-IN-SUIT

Card Verification Solutions asserts one patent in this action - the '245 patent. This patent

was filed, examined, and allowed under the strict patent eligibility standards applied by the U.S.

---

a summary judgment ruling. *See CyberSource Corp. v. Retail Decisions, Inc*. 620 F.Supp.2d
1068, 1073 (N.D. Cal., 2009).

[4] To illustrate this point, Defendants argue that the claims of the '245 patent fail to recite a
specific machine or apparatus. Setting aside the fact this this argument only applies to the
"machine" prong of the test, and that the Supreme Court has held the test is merely an
investigative tool that may be used in making the patent eligibility determination, how can this
issue be decided without first determining the scope of the claims? Simply put, it cannot.

[5] To the extent this Court wishes to rule on the validity of the '245 patent in denying Defendants'
motions to dismiss, the inventions disclosed in the '245 patent are clearly eligible for patent
protection under 35 U.S.C. § 101, as discussed *infra*, Section III.B (pp. 17-22).

Patent and Trademark Office ("USPTO") before the Federal Circuit broadened patent eligibility in *State Street Bank & Trust Co. v. Signature Fin. Group, Inc*., 149 F.3d 1368 (Fed. Cir. 1998).[6]

The '245 patent generally relates to a process for providing verification information for a transaction. *See* '245 patent, Title, Abstract, 1:33-35. The claimed inventions allow for obtaining authorization of credit card transactions made via a non-secure communication network, such as the Internet, while reducing the chance for credit card fraud. *See Id.*, at Abstract, 1:33-35. The '245 patent was an important step forward in providing safety in the consummation of financial transactions over the internet and other non-secure networks. Since the '245 patent issued in 1998, it has been cited on the face of more than 180 issued U.S. patents, and cited by examiners during prosecution in more than 40 of those patents.[7] As such, the invention and other teachings disclosed in the '245 patent have played a significant role in the advancement of data security technology in the Information Age.

The patent application that ultimately issued as the '245 patent was filed on March 20, 1995. *See* '245 Patent, Filing Date. In 1995, the Internet was still a fairly new technology, and the use of the Internet for commerce and other financial transactions had not yet gained wide-spread acceptance.[8] One of the advantages of inventions claimed in the '245 patent is that

---

[6] At least one Defendant argues that the Court of Appeals for the Federal Circuit utilized the "useful, concrete, and tangible result" test for patentable subject matter when the '245 patent issued. Case No. 1:13-cv-06335, Dkt. 20, at 1. This assertion is misleading, as the decision in *State Street Bank* was issued on July 23, 1998. 149 F.3d 1368. A Notice of Allowability was entered on January 21, 1998, and an Issue Notification was entered on June 8, 1998 for the '245 Patent. *See* Exhibit B to Declaration of Joseph P. Oldaker, attached as Exhibit 1 ("Dec. J. Oldaker"). These dates were several months prior to the *State Street Bank* decision.

[7] *See* Exhibit A to Dec. J. Oldaker. The '245 patent has also been cited in 7 U.S. Patent Application Publications and more than 15 foreign/international patent applications. *Id.*

[8] *See e.g.*, Andreas Crede, *Electronic Commerce and the Banking Industry: The Requirement and Opportunities for New Payment Systems Using the Internet*, JOURNAL OF COMPUTER-MEDIATED

4

confidential information for use in a transaction is organized into tokens via electronic means and transmitted over an unsecured network with reduced risk of it being captured by an untrusted party. *See e.g.* '245 patent, 2:13-20. This results in enhanced security for the transaction. *Id.*, at 2:32-36.

Stated generally, the claimed inventions relate to methods for providing verification information with respect to a transaction between an initiating party and a verification-seeking party. The verification information is provided by a third, verifying party, based on confidential information in the possession of the initiating party. '245 patent, 1:37-45. This is accomplished by generating first and second tokens on behalf of the initiating party, each of which represents some but not all of the confidential information. *Id.*, at 1:37-54, Claims 1, 20-24. The first and second tokens are sent electronically via a nonsecure communication network and collected at the verifying party. *Id.* The confidential information is then verified at the verifying party based on comparing the first and second tokens. *Id.*, at 1:37-60, Claims 22-23. Verification information is then sent electronically via a nonsecure communication network from the verifying party to the verification-seeking party. *Id.*

The claimed methods in the '245 patent may be further understood in light of the Figures.

---

COMMUNICATION, Vol. 1, Issue 3, (December 1995). *Available at* http://onlinelibrary.wiley.com/doi/10.1111/j.1083-6101.1995.tb00171.x/full#ss6.



**FIG. 1**

As shown above in Figure 1, and described in its accompanying description, the method is described in relation to a remote terminal 12, a merchant's terminal 17, a verification agent's terminal 21, modems 14, 18, 22, a keyboard 24, a smart card reader 8, and a card swiping device 26. In this embodiment, the information is transmitted via unsecured telephone lines 31. '245 patent, 1:15-21. In this embodiment, a consumer at a remote terminal 12 in a network 10 may electronically make a credit card purchase from a merchant 16 by entering a credit card number 25 and expiration date 27 of the credit card through a keyboard 24 or a swiping device 26 (which reads an encoded metallic stripe on the card) attached to the terminal 12. *Id*., at 1:1-30.

Figure 2 provides an additional embodiment where the components are similar to those in Figure 1. However, the information is transmitted via Internet connection 40.

6



**FIG. 2**

Additionally, it should be appreciated that the embodiment disclosed in Figure 2 includes features such as random generator 28 and software 29 on the computer 12 having the card swiping device 26, smart card reader 8 and/or keyboard 24.[9]

---

[9] Figure 3 and its corresponding description provides a flow diagram showing changes in data sent in a non-secure communication network for a secured credit card transaction, in accord with another embodiment disclosed in the '245 patent. *See e.g.,* '245 patent, Figure 3.

The patent language and figures presented *supra* demonstrate that the methods claimed in the '245 patent are not "abstract ideas" or "purely mental steps" that are "the basic tools of scientific and technological work." Rather, the '245 patent includes inventive concepts that are limited meaningfully, as the claim recites additional limitations, beyond any abstract concept, which are essential to the invention. Those added limitations do more than recite pre- or post-solution activity, as they are central to the solution itself.

### III.    ARGUMENT

**A.    Claim Construction is Necessary in this Case Prior to Resolving the Issues of Patent Eligibility Under 35 U.S.C. § 101 Raised by Defendants' Motions.**

Claim construction is an important first step in a 35 U.S.C. § 101 analysis. *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008). It will be rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter, because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary. *Ultramercial* 722 F.3d at 1342, citing *CLS Bank Int'l v. Alice Corp*., 717 F.3d 1269, 1304–05, 2013 WL 1920941, *33 (Fed. Cir. May 10, 2013).[10] Further, if Rule 12(b)(6) is used to assert an affirmative defense, dismissal is appropriate only if the well-pleaded factual allegations in the complaint, construed in the light most favorable to the plaintiff, suffice to establish the defense. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Thus, the only plausible reading of the patent must be that there is clear and convincing evidence of ineligibility. *Ultramercial*, 722 F.3d at 1339. For those reasons, Rule 12(b)(6) dismissal for lack of eligible subject matter will be the exception, not the rule. *Id.*

---

[10] A petition for *certiorari* has been filed in the *Ultramercial* case and the Supreme Court has yet to grant or deny the request.

In this procedural posture, a District Court should either: (1) construe the claims in accordance with *Markman*, (2) require the defendant to establish that the only plausible construction was one that, by clear and convincing evidence rendered the subject matter ineligible (with no factual inquiries), or (3) adopt a construction most favorable to the patentee. *Ultramercial*, 722 F.3d at 1349. A patentee is not required to come forward with a construction that would show the claims are eligible. *Id.*

In the present cases no discovery has occurred. The parties have not exchanged infringement or invalidity contentions. The parties have not exchanged a list of possible claim terms for construction, or engaged in the claim construction process. To force Card Verification Solutions, LLC to come forward with a claim construction in this brief to counter Defendants' arguments is improper. *Ultramercial,* 722 F.3d at 1349.

Setting this aside, even a cursory review of the '245 patent demonstrates that the claimed inventions are not mere "abstract ideas" or "purely mental steps" that are "the basic tools of scientific and technological work." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972). As a result, this Court should deny Defendants' motions and construe the claim terms in accordance with *Markman* or rule that the claimed inventions in the '245 patent are directed to patent eligible subject matter.

1. **Defendants Do Not Come Close to Meeting Their Burden of Demonstrating that all 24 claims of the '245 Patent are Invalid.**

To meet their burden Defendants must establish that the only plausible construction of the '245 patent claims is one that, by clear and convincing evidence, renders the subject matter of the claims ineligible, with no factual inquiries. *Ultramercial*, 722 F.3d at 1349. Defendants have failed to meet this burden for at least two reasons.

9

First, Defendants have failed to evidence or otherwise support how their proposed constructions of the claims in the '245 patent are *the only plausible constructions*. Defendants simply recite the language of at least claim 22 and make general conclusions about the nature of the language.[11] At no point does any Defendant even opine on the only plausible construction of claim terms. Instead, all Defendants took the liberty of proposing unreasonably broad constructions of claim terms in the '245 patent to support their unified position that the claims are impermissibly "abstract." This clearly fails the test and does not meet Defendants' burden.

Secondly, Defendants have failed to show that there are no factual inquiries at issue. Instead, Defendants' arguments actually raise issues that can only be resolved via the claim construction process. For instance, Bank of America Corporation argues that claim 22 of the '245 patent "does not specify how the 'generating' step is accomplished or how it occurs. It simply is the manipulation of information which encompasses mental judgments that can be done entirely with pen and paper." Case No. 1:13-cv-06335, Dkt. 20, at 14. However, such an assertion is not a reasonable construction of the term "generating." The specification of the '245 patent never mentions the use of pen and paper for "generating." The claimed "generating" in the '245 patent claims is described in terms of a computer having specialized equipment and/or software to generate "first and second tokens." *See e.g.,* '245 patent, 1:37 – 3:27; Figs. 1-3; claim 22.

Even if it is assumed *arguendo* that the "generating" step could be accomplished with pen and paper, this does not push the claim into the realm of an abstract idea, such as a mathematical formula, pure mental step, algorithm, or principle. It would still be the action of a person,

---

[11] *See* Case No. 1:13-cv-06335, Dkt. 20, at 6-14; Case No. 1:13-cv-06337, Dkt. 17, at 6-12, 14; Case No. 1:13-cv-06339, Dkt. 16, at 5-13; Case No. 1:13-cv-06340, Dkt. 18, at 6-12; and Case No. 1:13-cv-06342, Dkt. 21, at 6-11.

thereby precluding a finding of invalidity under Section 101. *See Ultramercial*, 722 F.3d at 1349, n. 2. Additionally, Defendants gloss over the importance of the word "tokens," as this may be a term of art used in the field of computer science.[12] In sum, Defendants' arguments create issues and highlight the need for claim construction prior to deciding the issue of eligible subject matter.

In an attempt to meet their burden, Defendants dedicated large portions of their briefs to providing high-level comparisons of the claims of the '245 patent to claims of other patents that have previously been held invalid under 35 U.S.C. § 101. However, in the cases on which Defendants' rely, such a finding of invalidity under Section 101 was only made *after the underlying factual issues were resolved*.

Defendants generally rely on three Federal Circuit cases to support their positions: *CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366 (Fed. Cir. 2011); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012); and *Accenture Global Servs., GMBH v. Guidewire Software, Inc*., 728 F.3d 1336, 1341 (Fed. Cir. 2013). *Accenture* and *Dealertrack* were decided after full claim construction briefing and *Markman* rulings. *See Accenture Global Services GmbH v. Guidewire Software Inc*., 2010 WL 883019 (D. Del., 2010) and *Dealertrack, Inc. v. Huber*, 2008 WL 5792509 (C.D. Cal., 2008). In *CyberSource* the parties had submitted a Joint Claim Construction Statement and the Court adopted the construction most favorable to the patentee in its summary judgment ruling. *See CyberSource Corp. v. Retail Decisions, Inc*. 620 F.Supp.2d 1068, 1073 (N.D. Cal., 2009). In relying on these cases, Defendants are improperly

---

[12] Plaintiff is not proposing claim constructions for these terms at this stage, these terms are provided to illustrate that a dispute exists concerning issues of fact that will require intrinsic and extrinsic evidence, discovery, and expert testimony. Plaintiff will present its claim construction positions in accordance with the claim construction process once a schedule is entered in these matters.

attempting to resolve the underlying factual disputes associated with claim construction of the '245 patent by conflating issues of fact with issues of law. Simply because claims in a completely unrelated patent had somewhat similar language should not and cannot impute another Court's construction of those claim terms to the '245 patent. This violates the fundamental tenets of claim construction jurisprudence, which requires a careful examination of the intrinsic evidence (i.e., patent and file history) as well as any pertinent extrinsic evidence prior to ruling on claim construction. *Phillips v. AWH Corp.*, 415 F.3d, at 1314-20. As such, Defendants have failed to meet their burden.[13]

      **2.**     **The Few Cases Cited by Defendants Where a Patent was Invalidated at the Motion to Dismiss Stage do not Provide Clear and Convincing Evidence that the Claims of the '245 Patent are Patent Ineligible as a Matter of Law.**

Defendants have cited several District Court cases in support of the proposition that a dismissal under Fed. R. Civ. P. 12(b)(6) pursuant to 35 U.S.C. § 101 without formal claim construction is proper under the posture of this case.[14] However, this assertion is misleading and Defendants' reliance on these cases is misplaced.

---

[13] To a lesser extent, Defendants also rely on *Bilski v. Kappos*, 130 S. Ct. 3218 (2010) ("*Bilski II*") and *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1275 (Fed. Cir. 2013) (*en banc*), *petition for cert. granted*, 134 S.Ct. 734, 82 USLW 3131, 82 USLW 3343, 82 USLW 3346 (U.S. Dec 06, 2013) (NO. 13-298, 13A95). However, Defendants' reliance on these cases is misplaced. *Bilski II* was a case that set out to resolve the issue of patentable subject matter at the United States Patent and Trademark Office, as it was an appeal from the Board of Patent Appeals and Interferences. 130 S. Ct. at 3220, 3224. As such, *Bilski II* is silent on the issue of claim construction prior to deciding a 12(b)(6) motion to dismiss. *See Id.* *CLS Bank* was decided after the parties completed limited initial discovery and agreed on certain key claim terms, 717 F.3d at 1274-75, and *certiorari* has been granted in the *CLS Bank* case. 134 S. Ct. 734.

[14] Defendants rely on *Content Extraction and Transmission, LLC v. Wells Fargo Bank, N.A.*, 2013 WL 3964909 (D.N.J. July 31, 2013); *BuySAFE v. Google, Inc.*, 2013 WL 3972261 (D. Del. July 29, 2013); *Cardpool, Inc. v. Plastic Jungle, Inc.*, 2013 WL 245026 (N.D. Cal. Jan. 22, 2013); *OIP Techs., Inc. v. Amazon.com*, 2012 WL 3985118 (C.D. Cal. Sept. 11, 2012); *Sinclair-Allison, Inc. v. Fifth Ave. Physician Servs., LLC*, 2012 WL 6629561 (W.D. Okla. Dec. 19, 2012); *Uniloc USA, Inc. v. RackSpace Hosting, Inc.*, No. 6:12-cv-375 (E.D. Tex. Jan. 3,

For instance, all Defendants rely heavily on *Content Extraction and Transmission, LLC v. Wells Fargo Bank, N.A*., 2013 WL 3964909 (D.N.J. July 31, 2013).  However, *Content Extraction* was a unique case.  The patents-in-suit were related to patents held to be invalid under 35 U.S.C. § 101 in a prior case in the same Court, *Glory Licensing LLC, v. Toys "R" US, Inc*., 2011 WL 1870591 (D.N.J., 2011).  *Glory Licensing* was decided shortly after the Supreme Court's decision in *Bilski II*, and did not have the benefit of the subsequent guidance of the Federal Circuit.  As such, these apparently piggy-backed decisions are the exception, not the rule, in § 101 jurisprudence.  *See Investpic, LLC v. FactSet Research Systems, Inc*. 2011 WL 4591078 (D. Del., 2011) (where the same Court declined to follow the *Glory Licensing* decision).

Most of the other cases cited by Defendants included some claim construction briefing or argument before the Court(s).  *See BuySAFE v. Google, Inc.*, 2013 WL 3972261 at *1 (D. Del. July 29, 2013) (claim construction briefing occurred in conjunction with the 12(c) motion); *Sinclair-Allison, Inc. v. Fifth Ave. Physician Servs., LLC*, 2012 WL 6629561 at *2 (W.D. Okla. Dec. 19, 2012) (the Court used plaintiff's construction where necessary); and *Graff/Ross Holdings LLP v. Fed. Home Loan Mort. Corp*., 892 F. Supp. 2d 190, 192 (D.D.C. 2012) (claim construction briefing and oral argument occurred prior to a Report & Recommendation by the Magistrate Judge).  As such, these cases have been improperly presented as standing for the notion that a 12(b)(6) motion can and should be decided prior to claim construction proceedings.

---

2013); *Vacation Exch., LLC v. Wyndham Exch. & Rentals, Inc*., No. 12-04229 (C.D. Cal. Sep. 18, 2012); *Glory Licensing LLC v. Toys "R" Us, Inc*., 2011 WL 1870591 (D.N.J. May 16, 2011); *CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710 (D. Del. 2012); and *Graff/Ross Holdings LLP v. Fed. Home Loan Mort. Corp*., 892 F. Supp. 2d 190 (D.D.C. 2012).

13

In the remaining cases cited by Defendants, the Courts improperly placed the burden on the plaintiff to come forward to explain how claim construction would materially impact the § 101 analysis, in direct conflict with the legal standard subsequently enumerated by the Federal Circuit in *Ultramercial*. *See OIP Techs., Inc. v. Amazon.com, Inc*., 2012 WL 3985118 at *5 (C.D. Cal. Sept. 11, 2012) ("Plaintiff fails to explain how claims construction would materially impact the § 101 analysis in the instant case; instead, it merely asserts in conclusory fashion that construction 'will undoubtedly impact the scope of the claims and could have bearing on the subject matter eligibility analysis.'"); *Vacation Exch., LLC v. Wyndham Exch. & Rentals, Inc*., No. 12-04229 at *3 (C.D. Cal. Sep. 18, 2012) ("Plaintiff failed to show any construction that would dictate a different analysis regarding patentable subject matter."); *CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 715 (D. Del. 2012) ("plaintiff did not explain how claim construction might alter such analysis. At oral argument, plaintiff also failed to articulate a compelling reason why the court would lack a full understanding of the claimed subject matter if it did not first construe the claims").

In *Ultramercial* (decided in 2013), the Federal Circuit reversed a decision of the Central District of California, explicitly stating that a patentee is not required to come forward with a construction that would show the claims are eligible under a 12(b)(6) motion to dismiss under § 101.  722 F.3d at 1349.  Therefore, the subsequent Federal Circuit authority is controlling, and these cases are inapposite.[15]

---

[15] It should also be noted that none of the cases cited by Defendants were decided in the Northern District of Illinois or subsequently affirmed by the Federal Circuit.  Therefore, this Court would err in relying purely upon the precedential effect any of Defendants' cited cases (*See supra* note 14).

14

**3.      The Machine-or-Transformation Test is Impossible to Apply in this Case Prior to Claim Construction.**

As their primary argument for patent-ineligibility under 35 U.S.C. § 101, Defendants primarily point to the so-called "machine-or-transformation test" and summarily state that the claims of the '245 patent do not meet the standards of the test, with little further inquiry.[16] The Supreme Court expressly rejected the use of the machine-or-transformation test as the sole method of inquiry into the patentability of abstract ideas (while noting that it may be an important <u>investigative tool</u>). *Bilski II*, 130 S.Ct. at 3227. Contrary to Defendants' arguments, post-*Bilski* patentability under 35 U.S.C. § 101 turns on whether a claimed invention is directed to "laws of nature, physical phenomenon, or abstract ideas." *Id.*, at 3225; *see also Ultramercial*, 722 F.3d at 1343 ("While machine-or-transformation logic served well as a tool to evaluate the subject matter of Industrial Age processes, that test has far less application to the inventions of the Information Age."). Because, as demonstrated above, Defendants' cannot meet their burden of proving by clear and convincing evidence that, under the only plausible construction, the claims of the '245 patent are directed to laws of nature, physical phenomenon, or abstract ideas,[17] the Court need not proceed any further to confirm that the '245 patent is valid under 35 U.S.C. § 101. However, if this Court wishes to utilize the machine-or-transformation test as an adjunct to the two-step test for assessing the abstract idea exception to patent subject matter eligibility under 35 U.S.C. § 101,[18] the claims of the '245 patent must first be construed.

---

[16] *See* Case No. 1:13-cv-06335, Dkt. 20, at 4-11; Case No. 1:13-cv-06337, Dkt. 17, at 5, 9-13; Case No. 1:13-cv-06339, Dkt. 16, at 9-13; Case No. 1:13-cv-06340, Dkt. 18, at 10-12; and Case No. 1:13-cv-06342, Dkt. 21, at 9.

[17] No Defendant contends the '245 patent is invalid for being directed to a law of nature or physical phenomenon.

[18] As described in *Ultramercial*: "When assessing the abstract idea exception to patent subject matter eligibility, the inquiry under 35 U.S.C. § 101 is a two-step one: first, whether the claim

15

To satisfy the machine-or-transformation test, a claim need only satisfy one prong – either the machine or transformation prong. A claimed process is patent-eligible under § 101 if: (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing. *Bilski II*, 130 S. Ct. at 3224. Regarding the machine prong, most Defendants have already conceded that it is not clear whether a machine, such as a computer, is part of the claims at issue.[19] This is an issue that should be addressed in claim construction. Moreover, this highlights that there are several important issues that should be addressed prior to making a determination as a matter of law at such an early stage in this litigation. Since this determination is clearly going to rely on factual issues that will be at the center of these disputes, this particular inquiry will likely be an important subject for expert testimony and extrinsic evidence. The same factual issues exist regarding the transformation prong. In order for the Court to decide the nature of the transformation at issue in the claims, along with how a particular article undergoes said transformation into a different state or thing, the Court will have to construe the claim terms of the '245 patent.

Claim construction is necessary in this case before a motion to dismiss or a motion for summary judgment can be decided, especially if this Court wishes to use the machine-or-transformation test as an analytical tool for the patentable subject matter inquiry under 35 U.S.C. § 101. Therefore, it would be proper for the Court to dismiss the Defendants' motions and allow the issue to be brought up again at summary judgment, post-claim construction. However, there

---

involves an intangible abstract idea; and if so, whether meaningful limitations in the claim make it clear that the claim is not to the abstract idea itself, but to a non-routine and specific application of that idea." 722 F.3d 1349, n. 2. *See also, infra* Section III.B (pp. 17-22).

[19] *See* Case No. 1:13-cv-06335, Dkt. 20, at 7; Case No. 1:13-cv-06337, Dkt. 17, at 10-12; Case No. 1:13-cv-06339, Dkt. 16, at 2, 10-11; Case No. 1:13-cv-06340, Dkt. 18, at 10; and Case No. 1:13-cv-06342, Dkt. 21, at 11.

is a better way for the Court to rule on these motions: to affirmatively decide the '245 patent is directed to eligible subject matter under 35 U.S.C. § 101.

**B.** **The Claims of the '245 Patent are Patent-Eligible Under the Test Set Forth in *Ultramercial*.**

Because, as demonstrated above, Defendants' cannot meet their burden of proving by clear and convincing evidence that, under the only plausible construction, the claims of the '245 patent are directed to abstract ideas, the Court need not proceed any further to confirm that the '245 patent is valid under 35 U.S.C. § 101 at this stage. However, it has been held by the Federal Circuit that claim construction may not always be necessary for a § 101 analysis. *Ultramercial* 722 F.3d 1339. If this Court finds that claim construction is not necessary to perform the analysis utilized for 35 U.S.C. § 101, there is only one possible outcome. This Court must declare the claims of the '245 patent are clearly valid under the test set forth by the Federal Circuit in *Ultramercial*.

When assessing the abstract idea exception to patent subject matter eligibility, the inquiry under 35 U.S.C. § 101 is a two-step one: first, whether the claim involves an intangible abstract idea; and if so, whether meaningful limitations in the claim make it clear that the claim is not to the abstract idea itself, but to a non-routine and specific application of that idea. *Id.* at 1349, n. 2.

**1.** **The Claims of the '245 Patent do not Involve an Intangible Abstract Idea.**

Defendants have failed to prove the first part of this test. The claims of the '245 patent do not deal with intangible abstractions. The claims of the '245 patent relate to <u>things that people and/or computers *do*</u>, not mathematical formulas, algorithms, or mere mental steps. An abstract idea has been characterized by the Supreme Court in the following manner: a "principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as

17

no one can claim in either of them an exclusive right." *Gottschalk*, 409 U.S. at 67, citing *Le Roy v. Tatham*, 55 U.S. 156, 175, (1852). Under such a definition, there is no plausible way that "generating first and second tokens" and "sending the first and second tokens electronically via a nonsecure communications network" could ever be considered abstract ideas. What is the "fundamental truth" at issue? What is the "principle in the abstract?" Frankly stated, none can be found.

Instead of directly asserting what the abstraction is in the claims of the '245 patent, Defendants' Motions to Dismiss simply impart an unreasonably broad construction to claim 22 of the '245 patent without addressing the philosophical underpinnings of the abstract ideas exception to patentability. Defendants' Briefs gloss over the fact that all patents are directed to ideas. The purpose of the patent system is to incentivize inventors to promote science and the useful arts by providing a limited monopoly on an invention in exchange for a disclosure of ideas. As such, a claim can embrace an abstract idea and be patentable. *See Mayo Collaborative Servs. v. Prometheus Labs., Inc*., 132 S.Ct. 1289, 1294 (2012) (explaining that the fact that a claim uses a basic tool does not mean it is not eligible for patenting). A claim is not patent eligible only if, instead of claiming an application of an abstract idea, the claim is instead to the abstract idea itself. *Ultramercial*, 722 F.3d at 1343.

In spite of the apparent confusion of Defendants regarding what actually comprises an abstract idea, Defendants make the assertion that the claims of the '245 patent are directed to an abstract idea. However, Defendants fail to concisely state what they contend the "abstract idea" is. In failing to define the abstract idea they contend is present in the claims of the '245 patent, Defendants have failed to prove that an intangible abstract idea, such as mathematical formulas, algorithms, or mere mental steps, is even at issue in the claims. Since Defendants have failed to

18

articulate the "abstract idea" that is embodied in the claims of the '245 patent, this Court should deny their motions to dismiss for failing to meet the first requirement of the *Ultramercial* test.

> **2.    To the Extent the Court Determines the '245 Patent Claims Involve an Intangible Abstract Idea, Meaningful Limitations in the Claims Make it Clear that the Claims are not Directed to an Abstract Idea Itself, but to a Non-Routine and Specific Application of that Abstract Idea.**

Since Defendants have failed to show that the claims of the '245 patent are directed to an intangible abstract idea by failing to define the abstract idea they allege is at issue, the analysis under 35 U.S.C. § 101 should end, and the claims should be determined patent-eligible based on the preceding section. *See Ultramercial* 722 F.3d at 1349, n. 2.[20]   This is intuitive because the second step of the inquiry includes analyzing whether meaningful limitations in the claim make it clear that the claim is not to the abstract idea itself, but to a non-routine and specific application of that idea. *Id.*   It is impossible to perform this analysis without first understanding what Defendants contend the "abstract idea" at issue is.

However, if this Court finds that the claims of the '245 patent do "involve an intangible abstract idea," the application of the second prong of the § 101 test is best viewed in light of the claim at issue in *Ultramercial*.   The patent at issue in *Ultramercial* claimed a method for distributing copyrighted products over the Internet where the consumer receives a copyrighted product for free in exchange for viewing an advertisement, and the advertiser pays for the

---

[20] In footnote 2 of *Ultramercial*, Chief Judge Rader stated,
> "[b]ecause the parties here focus only on the second step, we do as well.  We note, however, that it is arguable that we are not even dealing with an intangible abstraction in the first instance; the claims relate to things that people do, not to mere mental steps.  Because the district court did not enter judgment on that ground and the parties do not brief it, we decline to address this alternative ground upon which this matter might be re-solved."

copyrighted content. 722 F.3d at 1337. In deciding the case, the Court viewed the claim as comprising the following steps:

> (1) receiving media products from a copyright holder, (2) selecting an advertisement to be associated with each media product, (3) providing said media products for sale on an Internet website, (4) restricting general public access to the media products, (5) offering free access to said media products on the condition that the consumer view the advertising, (6) receiving a request from a consumer to view the advertising, (7) facilitating the display of advertising and any required interaction with the advertising, (8) allowing the consumer access to the associated media product after such display and interaction, if any, (9) recording this transaction in an activity log, and (10) receiving payment from the advertiser. *Id.* at 1350.

These steps could easily be characterized in the same way Defendants characterize the claims of the '245 patent in their briefs. When the *Ultramercial* claim is boiled down to its essence, it simply recites: receiving media, selecting an advertisement, providing said media for sale, restricting general public access to said media, offering free access to said media, receiving a request from a consumer to view advertising, facilitating the display of advertising, allowing the consumer to view the media, recording the transaction in an activity log, and receiving payment. There is very little in this claim that requires the use of a computer, a "special-purpose computer," or any other particular machine. As such, a very broad reading of the claim listed above may result in a reader believing the claim steps could be performed with a pen and paper, over the telephone, or otherwise by hand (see steps 1-2, 4-10). In fact, the only step in the claim from *Ultramercial* that arguably recites a computer or other component is step (3): providing said media products for sale on an Internet website.

The Federal Circuit found that the claimed invention in *Ultramercial* did not attempt to patent an abstract idea. 722 F. 3d at 1354. It first noted that the "claim does not cover the use of advertising as currency disassociated with any specific application of that activity. It was error

20

for the district court to strip away these limitations and instead imagine some 'core' of the invention." *Id*., at 1350. The court further reasoned that "it is clear that several steps plainly require that the method be performed through computers, on the internet, and in a cyber-market environment." *Id*. The presence of an "extensive computer interface" and lack of any claim to the concept of "sell[ing] advertising using a computer" generally "meaningfully limit[ed] the 'abstract idea at the core' of the claims." *Id*. These limitations, via both the requirement for an extensive highly programmed computer interface, as well as the ten steps in the claim, sufficiently allowed the court to view the claims at issue as an application of an abstract idea, rather than an abstract idea alone.

Defendants have stripped away the limitations present in the claims of the '245 patent to present some "core" of the invention that they erroneously assert is abstract in nature, even though that "core" comprises actions of people and/or computers instead of mere abstractions.[21] Further, Defendants are attempting to say that this Court should ignore the other limitations in the claim that fall outside of their fictitious abstract "core." However, taking this approach violates both common sense and the clear holding of *Ultramercial*.

This Court must recognize the presence of various meaningful limitations within the claims of the '245 patent that point to a specific application of an activity, as it is clear that several steps plainly require that the method be performed through computers, on the Internet, and in a cyber-market environment. For instance, claim 22 includes the following terms that evidence this fact: "generating," "first and second tokens," "electronically," "non-secure communication network," "collecting," and "verifying." Other claims have additional

---

[21] *See* Case No. 1:13-cv-06335, Dkt. 20, at 12-15; Case No. 1:13-cv-06337, Dkt. 17, at 6-12; Case No. 1:13-cv-06339, Dkt. 16, at 5-9; Case No. 1:13-cv-06340, Dkt. 18, at 6-12; and Case No. 1:13-cv-06342, Dkt. 21, at 5-11.

limitations that evidence the method is to be performed through computers, on the Internet, and in a cyber-market environment, including "tag" (as in claims 4-7, 20), "stored confidential information" (claim 2), "associating" (claim 20), and "deriving" (claim 20).[22] Moreover, just as in *Ultramercial*, an extensive computer interface is disclosed in the specification. '245 patent, 1:5-30; 2:25 - 4:6; Figs. 1-3. As such, the claims of the '245 patent point to a non-routine and specific application of an activity, and not an abstract idea.

Furthermore, the meaningful limitations listed above further illustrate the fact that the claims of the '245 patent do not risk preemption of an abstract idea, such as "verifying information in a transaction."[23] Each and every claim of the '245 patent recites additional limitations that are essential to the claimed inventions. One such example of an additional limitation is the presence of first and second tokens in each claim of the '245 patent. The presence of this limitation clearly does not allow for preemption of the entire idea of "verifying information in a transaction," because an artisan attempting to verify information in a transaction could use no tokens, or one token, regardless of the potential constructions of the word "token." The same holds true for the limitations "electronically" and "nonsecure communication network." Therefore, there is absolutely no risk of preemption of an abstract idea.[24]

---

[22] While Plaintiff is not proposing claim constructions for these terms at this stage, this list of terms is provided to simply illustrate that a dispute exists that should be taken up in a *Markman* hearing pursuant to the Scheduling Orders entered in these cases.

[23] Plaintiff does not contend this is an intangible abstract idea present in the claims of the '245 patent. The concept of "verifying information in a transaction" is presented here as what *might be construed as an abstract idea* for the purposes of showing that such an idea is not preempted by the claims of the '245 patent.

[24] It should be noted that whether a claim preempts "too much" will often require claim construction and factual inquiries. *Ultramercial*, 722 F.3d at 1346.

## VI.    **CONCLUSION**

Defendants' motions must be denied.  At best, Defendants' motions are premature and Defendants' request should be addressed after claim construction and discovery, as the analysis under 35 U.S.C. § 101, while ultimately a legal determination, is rife with underlying factual issues.   In denying Defendants' motions, this Court has two options: it can (1) dismiss Defendants' motions and allow this issue to be brought up again at summary judgment, post-claim construction; or it may (2) affirmatively rule the '245 patent is directed to eligible subject matter under 35 U.S.C. § 101.   For the reasons stated herein, Card Verification Solutions respectfully requests that the Court enter a ruling finding that all claims of the '245 patent are directed to subject matter eligible for patent protection under 35 U.S.C. § 101.   In the alternative, Card Verification Solutions respectfully requests that the Court deny Defendants' motions at this stage and allow the issue to be brought up again at summary judgment, post-claim construction.

DATED: January 20, 2014                           Respectfully submitted,

                                              */s/* Joseph P. Oldaker
                                              Timothy E. Grochocinski
                                              Aaron W. Purser
                                              Joseph P. Oldaker
                                              INNOVALAW, P.C.
                                              1900 Ravinia Place
                                              Orland Park, Illinois 60462
                                              P. 708.675.1975
                                              F. 708.675.1786
                                              teg@innovalaw.com
                                              apurser@innovalaw.com
                                              joldaker@innovalaw.com

                                              COUNSEL FOR PLAINTIFF
                                              CARD VERIFICATION
                                              SOLUTIONS, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon the named parties with the Clerk of the Court using CM/ECF which will automatically send e-mail notification of such filing to all attorneys of record in this action on January 20, 2014.

                                              /s/ Joseph P. Oldaker
                                              Joseph P. Oldaker

24